UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

UNITED STATES OF AMERICA,

    Plaintiff,

  v.

    Case No: 1:23-cr-24-JMB
    Honorable Jane M. Beckering
    United States District Judge

KRISTIAN IGNACIO FELIZ,

    Defendant.
_____/

## DEFENDANT'S SENTENCING MEMORANDUM

Defendant Kristian Ignacio Feliz, through his attorney Cirilo Martinez, respectfully offers this Sentencing Memorandum for the Courts consideration in imposing a sentence. A Pre-Sentence Investigation Report has been prepared and provided to Mr. Feliz. Mr. Feliz has three objections to the Pre-Sentence Investigation Report as filed with this court. Mr. Feliz requests that this Honorable Court consider this memorandum, the factors in 18 U.S.C. § 3553(a) and impose a sentence that is sufficient, but not greater than necessary to:

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed education or vocational training medical care, or other correctional treatment in the most effective manner;

1

Put simply, when imposing a sentence, the courts are to ultimately consider the totality of the circumstances.

## I.  OVERVIEW

As this Court is firmly aware a Pre Sentence Investigation Report is conducted to find the history including the educational, criminal, family, and social background of a person convicted of a crime. It is intended to summarize for a court the background information needed to determine the appropriate sentence tailored individually to each and every defendant.

Further 18 U.S.C. §3661 provides that "…no limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."

Mr. Feliz grew up without a father or any meaningful paternal role model.  He was often bullied because he had no one to make a Father's Day card to at school.  Mr. Feliz described that on Father's Day, he would make a card for his mother and his grand mother causing him even greater shame once the other students saw his work.  At around the age of 7 years old he was diagnosed with Attention Deficit Hyperactivity Disorder (ADHD) that was not properly treated.

"ADHD, is considered a chronic and debilitating disorder and is known to impact the individual in many aspects of their life including academic and professional achievement, interpersonal relationships and daily function (V. Harpin, 2015).  ADHD can lead to poor self-esteem and social function in children when not appropriately treated. (V. Harpin et al, 2016) Adults with ADHD may experience poor self-worth,

sensitivity towards criticism, and increased self-criticism possibly stemming from higher levels of criticism throughout life." (Beaton, et al., 2022) Rana Elmaghraby, M.D., What is ADHD, *American Psychiatric Association*, June 2022)

https://www.psychiatry.org/patients-families/adhd/what-is-adhd - :~:text=Attention-deficit%2Fhyperactivity disorder (ADHD) is one of,in the moment without thought).

Without the proper treatment Mr. Feliz would have struggled with self-esteem and social functions as a child and continued equally throughout adulthood. "While the majority (87%) of outcomes in children with untreated ADHD were poorer compared with non-ADHD controls (including all social function outcomes), the over all proportion of poorer outcomes in individual with untreated ADHD versus non-ADHD controls was lower in the older groups, despite these being untreated populations. While this may indicate that problems with self-esteem and social function may ameliorate somewhat with maturity during the natural course of ADHD, the greater proportion of poorer versus similar outcome suggest that they do not always improve over time, in agreement with findings that adults with ADHD continue to experience considerable impairments in daily life." V. Harpin, Long-Term Outcomes of ADHD; A Systematic Review of Self-Esteem and Social Function, *Journal of Attention Disorders*, Vol. 20(4) 295-305, 2016. citing (Biederman, J. Mick E & Faraone, SV): Age-Defendant decline of symptoms of attention deficit hyperactivity disorder: Impact of remission definition and symptom type. *American Journal of Psychiatry*, 157, 816-818. (2000); (Brod, M. Pohlman, Comparison of the burden of illness for adults with ADHD across seven countries: A qualitative study. *Health and Quality of Life Outcomes*, 10, 47. (2012))

https://journals.sagepub.com/doi/abs/10.1177/1087054713486516?casa_token=eKR6sCP

3

01-QAAAAA:tNvxIpY5DKB1DAX8syJlen0762727hynmNxN53yLTA_f4M0JSyujazJDW26CktP8PsiiyjbAPtzNKw&casa_token=YQ5CrvgIOt8AAAAA:1F2lcfrIoXMcZJ-hVAjWsOSwd9LnheOb0cErewaum5VbLbzS65yyo2sCF

Perhaps the Court would ask, how was Mr. Feliz able to complete college and enroll at a highly regarded Masters Degree Program in Quantum Physics at La Universidad de Barcelona? It is counsel's assertion that Mr. Feliz also suffers from Autism Spectrum Disorder (ASD).

"ASD is a condition that affects social interaction, communication, interest, and behavior. Many children with ASD are exceptionally smart, this high intelligence manifests in various ways… There are several theories explaining why children with autism often display higher than average intelligence. One theory posits that that these children have a heightened ability to concentrate on detail, allowing them to excel in fields requiring precision and focus. Their brains tend to process information differently, leading to exceptional memory recall and problem-solving skills. Furthermore, many children with autism have naturally occurring, intense interest without intellectual disabilities" https://www.goldencaretherapy.com/what-makes-children-with-autism-exceptionally-intelligent/

Through this information Mr. Feliz does not stray away from his responsibility, he presents this information for the Court to understand that with the help of professionals he can overcome these types of behaviors and become a healthy safe member of society.

II. Objections to PSR

Mr. Feliz objects to the 2 points enhancement for engaging in distribution of child

4

pornography. "Distribution" means any act, including possession with intent to distribute, production, transmission, advertisement, and transportation, related to the transfer of material involving the sexual exploitation of a minor. Accordingly, distribution includes posting material involving the sexual exploitation of a minor on a website for public viewing but does not include the mere solicitation of such material by a defendant. (see) USSG §2G2.1, comment (n.1(A)) The plain language of the guideline and the application note make it clear that this enhancement should not apply.

First, because Mr. Feliz "encouragement" of the victim S.F. to "distribute" child pornography does not qualify under the guideline because, the government cannot establish by a preponderance of the evidence, that any child pornography was actually distributed, and his acts should be considered "solicitation of material" at best.

Further, distribution impliedly involves delivery to someone other that the person who does the delivering, if Mr. Feliz sent the images to his own account, then that would not be considered distribution. Consequently, this enhancement should not apply and paragraph 34 should be deleted from the report and the 2 points enhancement should not be applied in the calculation of the guidelines.

Also, Mr. Feliz objects to the 2 points enhancement for use of a computer or an interactive computer service for the purpose of producing sexually explicit material or for the purpose of transmitting such material live. The mere fact that a computer was used to entice a minor victim and a cell phone was later used to video a sexual encounter between defendant and the minor does not automatically support the application under USSG §2G21(b)(6). The plain language of this Guidelines provision requires the Court to find that the solicitation of the minor was "for the purpose of producing sexually explicit

material." Because the government cannot establish by a preponderance of the evidence that Mr. Feliz used a computer to entice a minor with the "purpose of producing or transmitting sexually explicit material", this enhancement should not apply and paragraph 35 should be deleted from the report and the 2 points enhancement should not be applied in the calculation of the guidelines.

Finally, Mr. Feliz objects to the 5 points enhancement pursuant Repeat and Dangerous sex offender against minors under USSG §4B1.5(b)(1). It is Mr. Feliz's contention that his conduct of was one continuous instance of prohibited sexual conduct that occurred within a 72 hour period. "Repeated prohibited sexual conduct with a single victim may qualify as a "pattern of activity" but "separate occasions" requires events that are "independent and distinguishable" from one another. United States v. Fox, 926 F.3d 1275, 1279 (11th Cir. 2019).

In this case, as indicated in paragraph 8 of the plea agreement: "…From January 3-5, 2023, in Kalamazoo County, Michigan Defendant used an I-phone, which was manufactured in China, to record videos of himself having sex with the same minor. One of the video was transmitted to Defendant's Discord account, where it had this filename…"

Clearly, in this case Mr. Feliz's conduct over the 72 hour period is not independent or distinguishable at all. As this Court is well aware, when the government seeks to apply an enhancement under the Sentencing Guidelines over defendant's factual objection, it has the burden of introducing "sufficient and reliable" evidence to prove the necessary facts by a preponderance of the evidence.

Mr. Feliz states that the correct guideline calculation should yield a base offense

6

level of 36 if the Court sustains Mr. Feliz's objections or 40 if the Court sustains the government's objection. Therefore the total offense level should be 33 or 77 after the 3 points reduction for acceptance of responsibility for the offense and category I, which would make the advisory sentencing guidelines 135 to 262 months.

### III. 18 U.S.C. § 3553 (a) Factors

This Court is well aware of the sentencing factors found at, 18 U.S.C. § 3553 which instructs the Courts to impose a sentence which is sufficient but not greater than necessary to punish the defendant for his criminal activity. *United States v Booker*, 543 US 220 (2005) The seven factors that the courts shall consider are listed in subsection 18 U.S.C. §3553 (a). Defendant understands that the guidelines are only one factor in sentencing. *Gall v United States*, 128 US 586 (2007)

(1). Nature and Circumstances of the Offense and the history and characteristics of the defendant. Section 3553(a)(2)(A) requires the Court to consider "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."

As the plain language indicates, this provision requires the Court to consider these purposes in relation to the *instant offense*. In this case, the current advisory range is greater than necessary to serve the punitive purpose of sentencing. The sentence minimally necessary to serve these purposes in relation to the instant offense would be more properly found by granting the Mr. Feliz's, motion for a downward variance.

The final presentence report accurately represents Mr. Feliz's academic history, graduating with honors from high school, attending and graduating from Rochester Institute of Technology and was pursuing a master's degree in Quantum Physics. [ECF

7

No. 44, PageID 146] He is exceedingly mathematically gifted but lacks the social functions for an array of reasons that may explain his conduct in this case. Counsel will submit to the Court that with ABA (Applied Behavior Analysis) therapy while he is serving time within the Bureau of Prisons Mr. Feliz can change his life and become a productive member of society. A Vermont Department of Corrections study showed a recidivism rate of 7.8% for those offenders who participated in treatment and .5% rate for those who completed treatment. Studies also indicate that "most sexual offenders do not re-offend sexually [and] that first-time sexual offenders are significantly less likely to sexually re-offend than those with previous sexual convictions." Andrew J. R. Harris & R. Karl Hanson, Sex Offender Recidivism: A Simple Question, Public Safety and Emergency Preparedness Canada (2004) https://www.ojp.gov/ncjrs/virtual-library/abstracts/sex-offender-recidivism-simple-question Same study found that "girl-victim child molesters" are far less likely to recidivate, with recidivism rates less than half those of "boy-victim child molesters."

  Mr. Feliz is only 24 years old and has his entire life in front of him. Counsel would submit to the Court that Mr. Feliz is the type of defendant who has a solid chance of overcoming his sexual offending behavior, not the repeat and dangerous sex offenders as described in paragraph 40 of the final PSR.

  The Sixth Circuit has supported far shorter sentences than the recommended 30-year sentence, at the statutory maximum, for a more gruesome case. In *United States v. Brattain,* 539 F.3d 445, 446 (6th Cir. 2008), the Court considered a case in which the father of the victim had repeatedly sexually abused his daughter from the time she was three until she was ten years old. The district court imposed a sentence of 144 months of

incarceration. *Id.* at 446 The government appealed because the district court rejected application of guideline 4B1.5(b)(1). In vacating the sentence and remanding for application of the sentence enhancement, the appellate court cautioned: "we think it is important to note that while the district court made one error in calculating the guidelines, the district court should remain mindful that the sentencing guidelines are merely advisory." *Id.* at 448. The appellate court continued, "the district court correctly applied the 3553(a) factor and gave more than adequate reasoning in support of the defendants sentence." *Id*. at 449. That court hoped that the same "detailed application of 3553(a) factors" and "explicit reasoning" would be "repeated on remand." *Id*. These statement demonstrated approval of a twelve-year sentence.

(2). The need for the sentence imposed. The sentencing statute also requires the Court to consider the "need for the sentence imposed . . . to afford adequate deterrence to criminal conduct" and the need to "protect the public from further crimes of the defendant." 18 U.S.C. §§ 3553(a)(2)(B) & (C).

  Mr. Feliz has pled guilty to a serious offense but he submits to this Court that society would not benefit from his lengthy incarceration. He understands the damaged that he caused to the victim. He understands that he needs to have a full mental health assessment done to treat his mental health illness and with that treatment he will be able to manage and mitigate any risk of future offenses. He would submit to the Court that a sentence of the mandatory minimum would serve both to afford adequate deterrence and protect the public from further crimes of this defendant.

(3). The need for vocational and correctional treatment. Section 3553(a)(2)(D) requires the Court to consider "the need for the sentence imposed . . . to provide the defendant

with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."

Mr. Feliz acknowledges his actions and knows that this Court will be sentencing him for those actions. Now he asks this Court to recommend that he be placed in a facility where he can continue his studies and where he can contribute to teaching others. Further, he asks this Court to recommend that he be placed in a prison closest to Danbury, Connecticut so that he can continue to foster a relationship with his aging family. Further Mr. Feliz asks this Court to order a full mental health assessment and treatment of his mental health.

(4). The sentencing guidelines. Mr. Feliz, has accepted responsibility for Counts 1 of the indictment. The scoring requirements for this offense are found in USSG §2G2.1. In this case Mr. Feliz asserts that the Base offense level should be held at 36 with a total offense level between a 33 and 37, further that his criminal history points would land him in category I, would make the advisory sentencing guidelines 135 [180 due to mandatory minimum] to 262 months. In this case, it is counsel assertion that Mr. Feliz's guidelines substantially over represents the seriousness of his criminal history or the likelihood that he will commit another crime, therefore, a downward departure would be warranted.

(5). Any Pertinent policy statement. This provision does not apply in this matter.

(6). The need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct. This provision does not apply in this matter.

(7). Restitution. The PSR indicates there have been no requests for restitution. Mr. Feliz would assert that although his family paid to retain counsel in this matter, that he is

indigent and unable to pay pursuant to the Justice for Victims and Trafficking Act of 2015 or the Amy, Vick, and Andy Child Pornography Victim Assistance Act of 2018.

## IV. Conclusion

Mr. Feliz was arrested on June 21, 2023 while attending college in Spain and has been incarcerated since then for this Indictment. Mr. Feliz has been in federal custody for approximately 11 months now. The 18 U.S.C. §3553 factors support a variance in this case to a sentence that is sufficient but not greater than necessary. His commitment to his family will guarantee that Mr. Feliz will never be before this Court again. He is full of potential and will serve his community well once he is released from prison.

Dated: May 15, 2024                                         Respectfully Submitted,

                                                    _____/s/_____
                                                    Cirilo Martinez,
                                                    Attorney for Defendant