UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

KRISTIAN IGNACIO FELIZ,

    Defendant.

_____/

No. 1:23-cr-24

Hon. Jane M. Beckering
U.S. District Judge

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S
SENTENCING MEMORANDUM AND VARIANCE MOTION**

Defendant Kristian Feliz moves for a downward variance and challenges four sentencing enhancements. The government opposes a variance due to the seriousness of Feliz's crime, and because his variance arguments are unpersuasive and speculative. The government also opposes his sentencing enhancement challenges.

**I.      No Downward Variance is Warranted**

Feliz argues that a downward variance is warranted based on his amenability to rehabilitation and likelihood of reoffending. The government opposes for two reasons.

First, Feliz's argument ignores other purposes of sentencing, which support a significant punishment. Because Feliz's crimes were heinous and repeated, and because they involved manipulating and abusing a child, a significant punishment is warranted "to reflect the seriousness of the offense" and "to provide just punishment." 18 U.S.C. § 3553(a)(2)(A). For the same reasons, and also because Feliz specifically foresaw that the

FBI might investigate and instructed his victim to conceal their communications to avoid detection, significant punishment is warranted "to promote respect for the law." *Id*.

Second, Feliz's arguments on his amenability to rehabilitation and likelihood of reoffending are unpersuasive and speculative. Feliz claims that he is unusually amenable to rehabilitation because he is non-neurotypical, and argues that "with the help of professionals he can . . . become a healthy safe member of society." (R.45: Def. Sent. Mem., PageID.161.) The necessary corollary of this argument is that, in Feliz's view, his claimed non-neurotypicality contributed to his crimes.

The defense claims Feliz has Attention Deficit Hyperactivity Disorder, and cites studies that find people with ADHD face various challenges. (R.45: Def. Sent. Mem., PageID.159–160.) Feliz's attorney also asserts that, in his opinion, "Mr. Feliz also suffers from Autism Spectrum Disorder." (*Id*., PageID.160.) The defense argues that if Feliz receives "ABA (Applied Behavior Analysis) therapy" while incarcerated, he "can change his life and become a productive member of society." (*Id*., PageID.165.)

This argument fails on multiple levels. As a preliminary matter, Feliz presents no evidence that he has either condition. During his presentence interview, Feliz reported only that he "<u>believes</u> he <u>may have been</u> diagnosed with" ADHD as a child. (R.44: PSR, PageID.145) (emphasis added). He provided no support for this tentative recollection, and still has not. Separately, Feliz's attorney identifies nothing that makes him qualified to render a medical diagnosis that Feliz has autism spectrum disorder, nor even any specific reason to think he does.

2

Feliz also cites nothing to suggest: (1) that ADHD or autism contributed to his crimes; (2) that his particular experience with ADHD or autism renders him amenable to treatment; or (3) the extent to which, if he received treatment for either condition, he would be less likely to reoffend. Feliz asserts that participating in ABA therapy would eliminate virtually any possibility of reoffending, based on a single Vermont Department of Corrections Study that he neither cites nor provides, and without any other supporting data, research, or arguments. (R.45: Def. Sent. Mem., PageID.165.)

Feliz cites a study by Harris and Harmon (2004) to argue, in a few sentences, that he is less likely to reoffend because he is a "first-time sexual offender," and because "'girl-victim child molesters' are far less likely to recidivate" than "boy-victim child molesters." (*Id.*, *see also* Exhibit B[1], a copy of that study.) But recidivism data for sex offenders is more complicated than he admits. (*See* Exhibit C: Roger Pryzbylski, *Recidivism of Adult Sexual Offenders*, Sex Offender Management Assessment And Planning Initiative (July 2015) (surveying the Harris and Harmon study alongside other scholarship in this area.))

For example, turning to Feliz's specific arguments, it is no surprise that fewer first-time sex offenders reoffend than proven serial offenders. But according to Harris and Harmon, even first-time sex offenders reoffend at a 19% rate within 15 years. (*Id.* at 2.) Likewise, although boy-victim child molesters reoffend more often than girl-victim child molesters, even girl-victim molesters like Feliz reoffend at a 16% rate within 15 years. (*See* Exhibit B, p. 8, Table 2.) And offenders under 50 years old, like Feliz, re-offend 26% of the

---

[1] The government attached Exhibit A to its original sentencing memorandum. To avoid duplicative labels, the exhibits here begin with Exhibit B, so there is a single alphabetical set at sentencing.

3

time. (*Id.*) Neither the scholarship nor Feliz indicates how the intersection of these various statistics impacts his individual likelihood of reoffending. But the research at least undermines Feliz's claim that, because he sexually abused a girl and is a first-time offender, he is automatically and straightforwardly less likely to reoffend.

Furthermore, despite the complicated relationship between various recidivism statistics, a few conclusions are clear, and none support Feliz's motion. First, "there is universal agreement in the scientific community that the observed recidivism rates of sex offenders are underestimates of actual reoffending." (*Id.* at 4.) Second, "[t]he observed sexual recidivism rates of sex offenders range from about 5 percent after 3 years to about 24 percent after 15 years." (*Id.*) Third, while "sex offenders have lower overall recidivism rates than non-sex offenders," "[c]hild molesters, rapists, and sex offenders overall . . . are far more likely than non-sex offenders to recidivate sexually." (*Id.*)

Feliz finally argues that a downward variance is warranted based on the sentence imposed in *United States v. Brattain*, 539 F.3d 445 (6th Cir. 2008). In that case, the district court imposed a within-Guidelines sentence of 144 months, and the Sixth Circuit reversed and remanded because the district court erred in not applying a five-level enhancement for the defendant's pattern of sexual misconduct under § 4B1.5(b)(1). In remanding, the Sixth Circuit observed that the district court's detailed rationale for sentencing Brattain to 144 months in prison was careful and exacting, and reminded the district court that the Guidelines are advisory. *Id.* at 449.

But the Sixth Circuit's comments in *Brattain* have no bearing on how this Court should sentence Feliz. It confirms only that, as to Brattain, the Sixth Circuit recognized

4

that a below-Guidelines sentence might have been warranted. It does not stand for the proposition that a 12-year sentence is appropriate for all sex offenders, or for Feliz in particular. Indeed, for offenders like Feliz, Congress so strongly disagrees that a 12-year sentence could possibly suffice that it imposed a 15-year mandatory minimum.

## II.     Feliz's Guidelines Challenges Fail

### A.     +2 Enhancement under § 2G2.1(b)(3) Engaged in Distribution of Child Pornography

Feliz challenges the two-level enhancement for having "knowingly engaged in distribution" of child pornography. § 2G2.1(b)(3). His objection fails for the reasons set forth in the government's sentencing brief. (R.46: Gov't Sent. Mem., PageID.171–72.) In his own sentencing brief, Feliz focuses on his claim that this enhancement applies only if "child pornography was actually distributed." (R.45: Def. Sent. Mem., PageID.162.)

Feliz is wrong. Section 2G2.1(b)(3) applies to all who "engaged in distribution"—broad language that does not require a completed transfer. If a completed transfer were required, the enhancement could have applied to those who "distributed"—a simpler, narrower, and more straightforward description, but one the Sentencing Commission eschewed. *See* Cmt. n.1. Feliz implicitly recognizes that distribution does not require a completed transfer by his embrace of Application Note 1. According to Feliz and Note 1, distribution "include[es] possession with intent to distribute" and "posting material . . . on a website for public viewing." (R.45: Def. Sent. Mem., PageID.162) (quoting § 2G2.1 cmt. n.1(A)). But possession with intent to distribute can occur without a completed transfer, and material can be posted for public viewing without attracting a viewer. Even on Feliz's understanding, a transfer is not required to be "engaged in distribution."

5

Indeed, Note 1 is even broader, as Feliz also acknowledges, extending to "any act" that is "related to the transfer of" child pornography. (R.45: Def. Sent. Mem., PageID.162) (quoting § 2G2.1 cmt. n.1.) The word "any," as used here, "is a term of great breadth." *United States v. Hecht*, 470 F.3d 177, 182–83 (4th Cir. 2006). At a minimum, it encompasses Feliz's instructions to his child victim to sell videos of his abuse and have the money sent to his online financial accounts.

### B.   +2 Enhancement under § 2G2.1(b)(6) Use of an Interactive Computer Service

Feliz challenges the two-level enhancement for having used a computer with the "purpose of producing or transmitting sexually explicit material." (R.45: Def. Sent. Mem., PageID.162.) As described in the government's sentencing memo, Feliz's challenge fails because he admitted having that purpose as part of his guilty plea. (*See* R.46, Gov't Sent. Mem., PageID.173–174.) In further support, the government is moving to submit under restricted access, as Exhibit D, a highlighted summary of Feliz's online messages with the victim. The government renews its position that, if Feliz persists with this objection, he is "act[ing] in a manner inconsistent with acceptance of responsibility." § 3E1.1 cmt. n.1.

### C.   +5 Enhancement under § 4B1.5(b)(1) Pattern of Activity Involving Prohibited Sexual Conduct

Feliz challenges the five-level enhancement for "engag[ing] in a pattern of activity involving prohibited sexual conduct." § 4B1.5(b)(1). According to Feliz, his "conduct over the 72 hour period" he spent in Kalamazoo, during which he committed daily acts of sex abuse, was not a "pattern" because no single occurrence of abuse was "independent or distinguishable" from the rest. (R.45: Def. Sent. Mem., PageID.163.) Instead, Feliz argues,

this Court should treat his repeated acts of sexual abuse as "one continuous instance of prohibited sexual conduct." (*Id.*)

Feliz's argument fails for two reasons. First, he narrowly focuses on his three-day stretch of repeated hands-on abuse, ignoring the months of unlawful sexual coercion and enticement that preceded it. Feliz's online coercion and solicitation of child pornography are part of his "pattern of sexual activity involving prohibited sexual conduct," and thus should also be considered. § 4B1.5(b)(1). *See United States v. Paauwe*, 968 F.3d 614, 616 (6th Cir. 2020) (affirming the pattern enhancement based solely on internet-based coercion and enticement of child pornography).

Second, "[t]he plain language of § 4B1.5(b)(1)" applies because, "on more than one occasion, [Feliz] produced sexually explicit images of an individual under the age of eighteen." *United States v. Corp*, 668 F.3d 379, 391–92 (6th Cir. 2012). Contrary to Feliz's position here, "[n]o circuit has overturned the application of § 4B1.5(b)(1) because the 'separate occasions' of prohibited conduct occurred too close together in time." *United States v. Sadeek*, 77 F.4th 320, 327 (5th Cir. 2023), *cert. denied*, 144 S. Ct. 829 (2024) (collecting cases). And, the Sixth Circuit has affirmed the pattern enhancement's application where, as Feliz did here,[2] a defendant committed sexual abuse "more than one time on different days." *United States v. Wandahsega*, 924 F.3d 868, 886 (6th Cir. 2019).[3]

---

[2] *See* Exhibit D, which contains descriptions of the videos with date and time metadata, and which the government is moving to file under restricted access.

[3] *See also United States v. Crow*, 2023 WL 8469452, at *2 (11th Cir. Dec. 7, 2023) (affirming enhancement; "[n]oncontinuous instances of prohibited sexual conduct that occur on different days constitute 'separate occasions.'"); *United States v. Telles*, 18 F.4th 290, 303 (9th Cir. 2021) (affirming enhancement; "[a]lthough we have not yet set forth a definition of 'separate occasions,' the record here clearly reflects that [the defendant] sexually

The sole authority Feliz cites actually supports the government's view. *See United States v. Fox*, 926 F.3d 1275 (11th Cir. 2019). In *Fox*, the defendant pled guilty to producing child pornography and appealed his sentence, including the pattern enhancement under § 4B1.5(b)(1). *Id*. at 1276–1277. The Eleventh Circuit affirmed, ruling first that the pattern enhancement can apply even where a defendant repeatedly abuses the same victim, as Feliz did. The Sixth Circuit agrees. *See Paauwe*, 968 F.3d at 618; *Brattain*, 539 F.3d at 448. The Eleventh Circuit also ruled that an "occasion" means "an event" or "an occurrence," and that "[m]ultiple, distinct instances of abuse—whether ongoing, related, or random—meet the enhancement[.]" *Fox*, 926 F.3d at 1280. That, too, supports applying the pattern enhancement to Feliz.

        Respectfully submitted,

        MARK A. TOTTEN
        United States Attorney

Dated: May 22, 2024         */s/ Patrick J. Castle*
        PATRICK J. CASTLE
        Assistant U.S. Attorney
        U.S. Attorney's Office
        P.O. Box 208
        Grand Rapids, MI 49501-0208
        (616) 456-2404

---

abused [a child] on two separate occasions—the first night he arrived in the United Kingdom and the second night of his trip. [The defendant] provides no authority to support the argument that his abuse of [the child] constitutes a single occasion of abuse.")