# EXHIBIT B

to Government's Opposition to
Defendant's Sentencing
Memorandum and Variance Motion

Sex Offender
Recidivism Study

Andrew J. R. Harris and R. Karl Hanson

Public Safety and Emergency Preparedness Canada

# Sex Offender

# Recidivism:

# A Simple Question

# 2004-03

This document is available in French.  Ce rapport est disponible en français sous le titre :
La récidive sexuelle : d'une simplicité trompeuse.

This document is also available on Public Safety and
Emergency Preparedness Canada's Internet site:  http://www.psepc-sppcc.gc.ca.



© Her Majesty the Queen in Right of Canada, represented by the Sollicitor General of Canada (Minister of Public Safety and Emergency Preparedness), 2004. All rights reserved.

Paper version
Cat. No. PS3-1/2004-3
ISBN 0-662-68211-4

PDF version
Cat. No. PS3-1/2004-3E-PDF
ISBN 0-662-37095-3

## Table of Contents

Abstract ....................................................................................................................................... ii

Introduction ................................................................................................................................ 1

Method ....................................................................................................................................... 3

Results ....................................................................................................................................... 7

Discussion .................................................................................................................................11

References ..................................................................................................................................15

Appendix I: Figures ...................................................................................................................17

Appendix II: Stability of Sexual Recidivism Estimates .............................................................23

## Abstract

This study examines sexual recidivism, as expressed by new charges or convictions for sexual offences, using the data from 10 follow-up studies of adult male sexual offenders (combined sample of 4,724).  Results indicated that most sexual offenders do not re-offend sexually, that first-time sexual offenders are significantly less likely to sexually re-offend than those with previous sexual convictions, and that offenders over the age of 50 are less likely to re-offend than younger offenders. In addition, it was found that the longer offenders remained offence-free in the community the less likely they are to re-offend sexually.  Data shows that rapists, incest offenders, "girl-victim" child molesters, and "boy-victim" child molesters recidivate at significantly different rates.  These results challenge some commonly held beliefs about sexual recidivism and have implications for policies designed to manage the risk posed by convicted sexual offenders.

## Introduction

Just about everybody would like to know how often sexual offenders recidivate with another sexual offence. Concerned politicians, an engaged media, and worried parents often assume that the recidivism risk of sexual offenders is extremely high, and routinely ask those working with this population questions such as "all sex offenders do it again don't they?" and "won't they just do it again if you let them out?" Such questions are best answered by appealing to research evidence; first, however, it is important to carefully consider the question being asked.

<u>A Simple Question</u>

The basic question about sexual offender recidivism is usually phrased along the following lines: "what percentage of sexual offenders commit another sexual offence once they've been released from prison?" This question is not as easy to answer as one might believe. First, we must define "recidivism". In some studies, recidivism is defined as a reconviction for a sexual offence (e.g., Hanson, Scott & Steffy, 1995). In other studies, recidivism includes all offenders who were charged with a new sexual offence, whether or not they were convicted (e.g., Song & Lieb, 1995). Including charges along with convictions should, of course, lead to higher estimates of recidivism (Prentky, Lee, Knight & Cerce, 1997). Other studies have used expanded definitions of sexual recidivism that include informal reports to child protection agencies, self-report, violations of conditional release conditions, and simply being questioned by police (e.g., Marshall & Barbaree, 1988). All else being equal, the estimated recidivism rate should increase with each expansion of the definition; the broader the definition, the larger the recidivism estimate should appear. Consequently, it is important to specify the recidivism criteria in any recidivism estimate (e.g., "what percentage of sexual offenders are either charged with, or convicted of, another sexual offence once they've been released from prison?")

Another factor to consider is the length of the follow-up period. As the follow-up period increases, the cumulative number of recidivists can only increase. It is important to remember, however, that an increase in the number of recidivists is not the same as an increase in the yearly rate of recidivism. For all crimes (and almost all behaviours) the likelihood that the behaviour will reappear decreases the longer the person has abstained from that behaviour. The recidivism rate within the first two years after release from prison is much higher than the recidivism rate between years 10 and 12 after release from prison. Consequently, any estimate of sexual re-offending must be "time-defined" or "time limited" (e.g., "over the first five years, post-release from prison, what percentage of sexual offenders are either charged with, or convicted of, another sexual offence?")

A third factor to consider is the diversity among sexual offenders. We know that incest offenders recidivate at a significantly lower rate than offenders who target victims outside the family (Hanson & Bussière, 1998). We also know that child molesters with male victims recidivate at a significantly higher rate than child molesters that only have girl victims (Hanson & Bussière, 1998). By considering the type of sexual offender, our simple question becomes, once again, more complex: (e.g., "over the first five years, post-release from prison, what percentage of child molesters with male victims are either charged with, or convicted of, another sexual offence?")

Many sexual offences are never reported to police; this is the same for all violent offences except murder. Our best estimates of unreported sexual offending come from victimization studies. In a typical study a random sample of people are telephoned and asked if they have been a victim of a crime within the last year. One recent victimization study found that there were approximately half a million sexual

assaults (499,000) committed in Canada in 1999 (Besserer & Trainor, 2000).  Although reports to police of violent and sexual crimes were steadily declining in Canada between the years 1993 and 1999; the years 2000 and 2001 saw 1% increases in violent and sexual crimes (Savoie, 2002).  Sexual victimization rates based upon victimization surveys appear to have remained basically unchanged across this same time period (Besserer & Trainor, 2000).  The Besserer and Trainor (2000) study showed that sexual assault had the highest percentage of incidents that were not reported to police (78%).  When respondents were asked why they did not report sexual victimization to the police, 59% of the respondents stated that the "incident was not important enough" to report.  Consequently, readers may wonder what counts as a sexual assault.

The Besserer and Trainor (2000) victimization study used a very broad definition of sexual assault.  They counted all attempts at forced sexual activity, all unwanted sexual touching, grabbing, kissing, and fondling, as well as threats of sexual assault (Jennifer Tuffs, personal communication, January 15, 2003).  Their broad definition undoubtedly included some behaviours that do not conform to the popular image of a sexual offence.

All unwanted sexual advances are wrong, possibly criminal, and have the potential to do psychological harm to the victim.  As a society, however, we need to decide whether we wish to count an unwanted touch on the buttocks as an unreported sexual crime.  Coming to an agreement on what constitutes a sexual crime will be a difficult task.  Setting the bar too low would criminalize social clumsiness and over-state the problem of sexual assault.  Setting the bar too high would devalue those victims who, while sustaining no overt signs of trauma, may have truly suffered at the hands of a sexual assailant.  A detailed examination of the relationship between observed and undetected sexual offences is beyond the scope of the current paper.  Readers should be aware, however, that the answer to the simple question of sexual offence recidivism requires specifying the nature of the offences being considered.  In the analyses that follow, recidivism is defined as sexual offences reported to police that are credible and sufficiently serious to justify charges or convictions.

The above review indicates that the simple question is not so simple.  Rather than asking "how often do sexual offenders re-offend"; the informed reader would inquire about the recidivism rates of particular types of sexual offenders (e.g., incest offenders versus rapists for example), over a specific time period (e.g., 10 years) using a particular definition of recidivism (e.g., new convictions for a sexual offence).  Failure to specify these distinctions can lead to wildly different estimates of the rate of sexual recidivism.

The present study addresses the question of sexual offender recidivism using a large, diverse sample drawn from multiple jurisdictions.  The combined sample is sufficiently large (4,724) that it is possible to calculate stable estimates of the observed recidivism rates after five, 10, and 15 years of follow-up for important subgroups of sexual offenders: rapists, girl victim child molesters, boy victim child molesters, incest offenders, those with or without a prior sexual offence, older offenders (age greater than 50 at release) and younger offenders.  This study also provides recidivism estimates for sex offenders who have been offence-free in the community for 5, 10, and 15 years.

# Method

<u>The Samples</u>

The present sample (N = 4,724) is comprised of 10 individual sub-samples.  These sub-samples range in size from 191 offenders to 1,138 offenders and were drawn from the following jurisdictions: Quebec, Ontario, Manitoba, Alberta, California, Washington, Her Majesty's Prison Service (England and Wales), and the Correctional Service of Canada (CSC; 3 data sets).  In five of the samples, "conviction for a sexual offence" was used as the recidivism criteria, in another four samples both "charges and convictions for another sexual offence" was used as the recidivism criteria.  In one sample (Manitoba), charges, convictions, and additional police information were used as the recidivism criteria.  An overview of the samples is presented in Table 1.

All the offenders were released from correctional institutions with the exception of the Manitoba Probation sample and about half of the offenders from the Washington sample, who received community sentences.  Racial ethnicity was not recorded for most samples, but given the demographics of the provinces, states and countries from which they were selected, the offenders can be expected to be predominantly white.  All offenders were adult males (18 years old or older at time of release).  Thirty-seven percent of the offenders were single and 27.9% had previously been sentenced for a sexual offence (9.4% had been sentenced more than once).

<u>Canadian Federal – Pacific Region</u> (CS/RESORS Consulting, 1991; Hanson, Broom & Stephenson, 2004).  This study followed sexual offenders released in British Columbia between 1976 and 1992.  The original aim of the study was to compare offenders who received mandatory community counselling (n = 401) and those released in earlier years without the benefit of this post-release program (n = 288).  Offenders released in the 1983/84 fiscal year (n = 38) were removed from this sample to avoid overlap with the other CSC cohort described below.  Recidivism information was coded in 2000 from Royal Canadian Mounted Police (RCMP) records.  Charges and convictions for sexual offences were used as the recidivism criteria in this sample.

<u>Canadian Federal Recidivism Study - 1983/1984 Releases</u> (Bonta & Hanson, 1995a; see also Bonta & Hanson, 1995b).  This study examined the 316 sexual offenders included in the complete sample of 3,180 federal offenders released by the CSC in the fiscal year 1983/1984.  Sexual offenders were defined as those who were released following any sexual conviction.  Recidivism information was collected in 1994 using national criminal history records maintained by the RCMP.  Conviction for another sexual offence was used as the recidivism criteria in this sample.

<u>Canadian Federal 1991 to 1994 Releases</u> (Motiuk & Brown, 1993; Motiuk & Brown, 1996).  This study followed a group of sexual offenders released by CSC between 1991 and 1994.  The offenders in this group were those who were reviewed in 1991 (see Motiuk & Porporino, 1993) while they were still incarcerated.  Follow-up information was coded in 1994 from RCMP records.  Charges and convictions for another sexual offence were used as the recidivism criteria in this sample.

<u>Millbrook Recidivism Study</u> (Hanson, Scott, & Steffy, 1995; Hanson, Steffy, & Gauthier, 1992; Hanson, Steffy, & Gauthier, 1993).  This study collected long-term recidivism information (15-30 years) for child molesters released between 1958 and 1974 from Millbrook Correctional Centre, a maximum security provincial correctional facility located in Ontario, Canada.  About half of the sample went through a brief treatment program.  Recidivism information was coded from RCMP records in 1989 and 1991.  Conviction for another sexual offence was used as the recidivism criteria in this sample.

<u>Institut Philippe Pinel (Montreal)</u>. (Proulx, Pellerin, McKibben, Aubut & Ouimet, 1997 ; Pellerin et al., 1996).  This study focused on sexual offenders treated at a maximum security psychiatric facility between 1978 and 1993.  The Institut Philippe Pinel in Montreal provides long term (1-3 years) treatment for sexual offenders referred from both the mental health and correctional systems.  Recidivism information

Table 1

Study characteristics.

| Sample | Total Sample Size | Age (SD) | Offender type Rape/EX/IN (%) | Sample size for type | Average years of follow-up | Sexual Recid. Rate | Recidivism Criteria |
|---|---|---|---|---|---|---|---|
| Canadian Federal - Pacific | 689 | 38 (11) | 36 / 30 / 33 | 362 | 11 | 24.7 | Chgs & Convic |
| Canadian Federal - 1983/84 | 316 | 31 (8.7) | -- / -- / -- | 0 | 10 | 19.7 | Convictions |
| Canadian Federal - 1991/94 | 241 | 37 (11) | 53 / 19 / 28 | 208 | 2 | 7.1 | Chgs & Convic |
| Millbrook, Ontario | 186 | 33 (10) | 00 / 82 / 18 | 186 | 23 | 35.5 | Convictions |
| Institut Philippe Pinel | 363 | 36 (11) | 30 / 43 / 27 | 349 | 4 | 16.3 | Convictions |
| Alberta Hospital Edmonton | 363 | 36 (10) | 27 / 27 / 46 | 363 | 5 | 5.5 | Convictions |
| SOTEP (California) | 1137 | 38 (8.9) | 29 / 40 / 31 | 1130 | 5 | 13.3 | Chgs & Convic |
| HM Prison Service (UK) | 529 | 36 (12) | 53 / 32 / 15 | 325 | 16 | 25.7 | Convictions |
| Washington State SSOSA | 587 | 36 (13) | 10 / 41 / 49 | 582 | 5 | 7.5 | Chgs & Convic |
| Manitoba Probation | 202 | 35 (12) | 26 / 42 / 32 | 128 | 2 | 10.2 | Chgs & Convic Plus |

Note: EX = Extrafamilial child molesters; IN = Intrafamilial child molesters

was collected in 1994 from RCMP records.  Conviction for another sexual offence was used as the recidivism criteria in this sample.

Alberta Hospital Edmonton - Phoenix Program. (Reddon, 1996; see also Studer, Reddon, Roper & Estrada, 1996).  The sexual offenders in this study were drawn from those treated at the Phoenix (Alberta Hospital Edmonton) program between 1987 and 1994.  The Phoenix program is an eclectic inpatient treatment program that receives many of its referrals from federal correctional facilities.  Recidivism information was collected in 1995 using RCMP records.  Conviction for another sexual offence was used as the recidivism criteria in this sample.

California's Sex Offender Treatment and Evaluation Project (SOTEP). (Marques & Day, 1996; see also Marques, Day, Nelson & West, 1993; Marques, Nelson, West & Day, 1994).  The primary aim of this ongoing study is to examine the efficacy of treatment. The sample used in the current study included sexual offenders randomly assigned to treatment (n = 172), matched volunteer controls, treatment refusers, as well as a general sample of sexual offenders from the California correctional system (total sample of 1,137).  Men who had offended only against their biological children were not included.  Subjects were admitted to this study between 1985 and 1995; follow-up information was collected in 1995 based on local and national criminal records, as well as local police and probation reports.  Charges and convictions for another sexual offence were used as the recidivism criteria in this sample.

Her Majesty's Prison Service (UK). (Thornton, 1997).  This study provided a 16 year follow-up of all sexual offenders released from Her Majesty's Prison Service (England and Wales) in 1979 (n = 573).  Recidivism information was based on Home Office records collected in 1995.  Very few of the offenders in this sample would have received specialised sexual offender treatment.  Conviction for another sexual offence was used as the recidivism criteria in this sample.

Washington SSOSA. (Berliner, Schram, Miller & Milloy, 1995; Song & Lieb, 1995).  This data set was created to evaluate Washington State's Special Sex Offender Sentencing Alternative (SSOSA), which allows judges to sentence sex offenders to community treatment.  To be eligible for SSOSA, offenders must be facing their first felony conviction for sexual crimes other than first or second degree rape.  The sample consisted of 287 offenders who received SSOSA and 300 who were statutorily eligible for SSOSA but did not receive it.  The majority of the sample was White (85%).  Offenders were convicted between January 1985 and June 1986, with follow-up data collected in December, 1990.  Charges and convictions for another sexual offence were used as the recidivism criteria in this sample.

Manitoba Probation. (Hanson, 2002).  This follow-up study was conducted as an evaluation of a risk scale used by probation officers in Manitoba, Canada.  The 202 offenders were consecutive admissions to probation between May, 1997 and February, 1999.  Recidivism information was collected in November, 2000, based on RCMP records.  Unlike the RCMP records used in the other studies (which included only charges and convictions that went to court), the RCMP records for the Manitoba sample included unresolved charges and cases currently under police investigation.

Analysis

Case specific information (without individual identifiers) from the original 10 data sets were merged for the analysis.  Recidivism estimates were computed using survival analysis (e.g., Allison, 1984).  This analysis produces the cumulative proportion surviving at the end of a specific time period.  These survival percentages were then subtracted from 100 to produce estimates of the recidivism potential at five, ten, and fifteen year intervals.  In addition, the standard error of measurement was calculated for these estimates allowing for the calculation of 95% confidence intervals.  Confidence intervals of 95% indicate the range within which the observed recidivism percentage should be found "19 times out of 20" or 95% of the time.

## Results

Sexual recidivism was measured using the original definitions from the original research reports: 5 data sets used convictions, 4 data sets used new charges (or a new conviction), and one sample used convictions, charges, and additional police information (Manitoba).  The five and 10 year recidivism estimates were 17% and 21% for the studies that used only convictions as their recidivism criteria, and 12% and 19% for the studies that used charges and convictions as their recidivism criteria.  Given the similarity in the recidivism rates based on convictions alone and charges and convictions, the data was combined to provide overall estimates of sexual recidivism rates.  The rates estimated using the combined sample would be closer to the reconviction rate than the re-arrest rate because it appeared that the sources used for the recidivism data contained relatively few charges that did not ultimately result in conviction.

<u>Sexual recidivism rates</u>

Table 2 summarises the recidivism estimates for three distinct time periods, five years, ten years, and fifteen years, for each of the subgroups examined.  The overall recidivism rates (14% after 5 years, 20% after 10 years and 24% after 15 years) were similar for rapists (14%, 21% and 24%) and the combined group of child molesters (13%, 18%, and 23%).  There were, however, significant differences between the child molesters, with the highest rates observed among the extrafamilial boy-victim child molesters (35% after 15 years) and the lowest observed rates for the incest offenders (13% after 15 years).

Offenders with a prior sexual offence conviction had recidivism rates about double the rate observed for first-time sexual offenders (19% versus 37% after 15 years).  Age also had a substantial association with recidivism, with offenders older than age 50 at release reoffending at half the rate of the younger (less than 50) offenders (12% versus 26%, respectively, after 15 years).  As expected, those who have remained offence free in the community were at reduced risk for subsequent sexual recidivism.  Whereas the average 10 year recidivism rate from time of release was 20%, the 10 year recidivism declined to 12% after five years offence-free and to 9% after 10 years offence-free.  The five year recidivism rate for those who had been offence-free for 15 years was 4%.  Offence-free was defined as no new sexual or violent non-sexual offence, and no non-violent offences serious enough that they are incarcerated at the end of the follow-up period.

<u>Survival curves</u>

The numbers in Table 2 were drawn from the survival analyses presented in Figures 1 through 6 (see Appendix I).  Readers interested in further details of the recidivism rates can use these figures to estimate recidivism rates for different time periods (e.g., 3 years).  Each offender is represented on the graph in the top left-hand corner at the time of release (time of sentencing for the community samples).  Upon release, none have yet recidivated in the community – hence, 100% have not recidivated at time "0".  As time passes (shown on the horizontal axis of the graph) some offenders recidivate and the survival curve descends.  In order to know the percentage of offenders who have remained offence-free in the community for 10 years, follow a vertical line from the 10 year mark (on the axis labelled "Time in years") up to the survival curve.  Next, go perpendicular from that point on the survival curve to the vertical axis (labelled "percentage of offenders that have not sexually recidivated").  To determine the percentage of offenders that have recidivated, simply subtract the percentage of offenders still in the community from 100.

One factor that should be noted from the graphs is that without exception, the longer offenders remain offence-free in the community the less likely they are to sexually recidivate.  The flattening, or plateauing, of the curves over time shows this fact.  The steepest part of the curve (the highest risk period) is in the first few years after release.

Table 2

Sexual Recidivism (%) across Time and Samples.

| Sub-Group | | 5 Years | 10 Years | 15 Years | Shown in Figure # |
|---|---|---|---|---|---|
| All sexual offenders | | 14 | 20 | 24 | 1 |
| Rapists | | 14 | 21 | 24 | 2 |
| Extended Incest Child Molesters | | 6 | 9 | 13 | 3 |
| "Girl Victim" Child Molesters | | 9 | 13 | 16 | 3 |
| "Boy Victim" Child Molesters | | 23 | 28 | 35 | 3 |
| Offenders without a previous sexual conviction versus those with a previous sexual conviction | Without | 10 | 15 | 19 | 4 |
| | With | 25 | 32 | 37 | 4 |
| Offenders over age 50 at release versus offenders less than age 50 at release | Over 50 | 7 | 11 | 12 | 5 |
| | Less than 50 | 15 | 21 | 26 | 5 |
| Sex Offenders - offence free in the community for Five, Ten, and Fifteen years | 5 years | 7 | 12 | 15 | 6 |
| | 10 years | 5 | 9 | ‡ | 6 |
| | 15 years | 4 | ‡ | ‡ | 6 |

‡ = Insufficient data to compute reliable estimates

### Error of estimation

The data presented in all the graphs and in Table 2 are estimates, and some error is inherent in the estimation process.  If the study was repeated with different samples, the numbers would not be exactly the same.  One way to appreciate the stability of estimates is to calculate 95% confidence intervals based on the standard error of estimate from survival analysis (see Appendix II).  Survival analysis computes standard error of estimate based on the number of recidivists and non-recidivists available at each previous time interval.  The 95% confidence intervals indicate the range in which the results are likely to be found, 19 times out of 20, if the study were repeated 20 times.

For example, looking at Appendix II, the five year estimate for the overall sample (14.0%) was based on an initial sample of 4,724 of which 2,492 were followed for at least 5 years.  The 95% confidence interval was 12.88% to 15.12%, plus or minus 1.12% from the estimate of 14.0%.  With large sample sizes, the confidence intervals are narrow, indicating that subsequent research is likely to find very similar results.  Readers should note, however, that confidence intervals expanded with extended follow-up times and when subgroups of offenders were examined.  For example, the 15 year estimate for boy-victim child molesters (35.4%), was based upon only 95 observations and had a confidence interval from 29.3% to 40.7% (± 5.7%).  Most of the confidence intervals were less than 5%.

### Interpretation of recidivism estimates

The recidivism estimates may be applied to the general case or to the individual offender.  For example, if you were faced with a group of 100 newly released rapists and you wanted to follow these offenders in the community over time (Looking at Table 2 – Second sub-group – "Rapists") you would expect fourteen (14) of these 100 rapists to reoffend within the first 5 years.  In the following 5 years, follow-up years 6 through 10, you would expect a further 7 rapists to reoffend for a total of 21 offenders failing after 10 years.  In the following 5 years, follow-up years 10 through 15, you would expect a further 3 rapists to recidivate for a 15-year estimated total of 24 out of 100, or 24% of the sample.  It is interesting to note that in each successive 5-year period that the recidivism rate basically halves, from 14% in the first 5 years post-release, to 7% in the second 5-year period, to 3% in the third 5-year period.

You may also estimate the recidivism probabilities of one offender over time.  If you have one "typical" rapist, the chance that he will recidivate by the end of the first 5 years would be estimated at 14%, by the end of 10 years at 21%, and by the end of 15 years at 24%.  The probability of recidivism for an individual offender will be the same as the observed recidivism rate for the group to which he most closely belongs.  The individual's recidivism risk will differ from his group's recidivism rate to the extent that the offender differs from "typical" members of the group (e.g., has committed more or fewer offences than average for that group).  It is important to remember that the confidence intervals for the recidivism estimates only apply to the group estimates and not to the individual estimates.  In statistical language, the expected mean value for the individual is the same as the group mean, but the variance of the mean is much greater for the individual estimate than for the group estimate.

## Discussion

Most sexual offenders do not re-offend sexually over time. This may be the most important finding of this study as this finding is contrary to some strongly held beliefs. After 15 years, 73% of sexual offenders had not been charged with, or convicted of, another sexual offence. The sample was sufficiently large that very strong contradictory evidence is necessary to substantially change these recidivism estimates. Other studies have found similar results. Hanson and Bussière's (1998) quantitative review of recidivism studies found an average recidivism rate of 13.4% after a follow-up period of 4-5 years (n = 23,393). In a recent U.S. study of 9,691 sex offenders, the sexual recidivism rate was only 5.3% after three years (Langan, Schmitt, & Durose, 2003).

Not all sexual offenders, however, were equally likely to reoffend. By using simple, easily observed characteristics, it was possible to differentiate between offenders whose five year recidivism rate was 5%, from those whose recidivism rate was 25%. The factors associated with increased risk were the following: a) male victims, b) prior sexual offences, and c) young age.

Although the number of recidivists increases with extended follow-up, the rate of offending decreases the longer offenders have been offence-free. The five year recidivism rate for new releases of 14% decreased to 4% for individuals who have been offence-free for 15 years. The observed rates underestimate the actual rates because not all sexual offences are detected; nevertheless, the current findings contrast with the popular notion that all sexual offender remain at risk throughout their lifespan.

The observed recidivism rates in the current study are slightly lower than the lifetime sexual recidivism rates estimated by Doren (1998) - 52% for child molesters and 39% for rapists. Doren's estimates were largely based on long-term follow-up of highly selected samples (Hanson et al., 1995; Prentky, et al., 1997); in contrast, the current study used larger and more diverse samples, including many low risk offenders serving community sentences. Doren's (1998) estimates were also based on charges, whereas most of the recidivism data in the current study was based on convictions.

Another difference is that Doren (1998) attempted to generate life-time estimates whereas our estimates extend only to 15 years. We were unable to locate any study that followed a large sample of sexual offenders until they were dead. Very long-term studies are difficult because records go missing, particularly for individuals who have had no recent involvement with the law (Hanson & Nicholaichuk, 2000). Nevertheless, the decreasing rate of offending with age suggests that the rates observed after 15 to 20 years are likely to approximate the rates that would be observed if offenders were followed for the rest of their lives.

When people ask questions about sexual offender recidivism rates, there often is an inherent assumption that the answer is a fixed, knowable rate that will not change. This supposition is unlikely to be true. The rate of sexual re-offence is quite likely to change over time due to social factors and the effectiveness of strategies for managing this population. Most of the offenders in the current study did not receive effective treatment, whereas treatment is currently provided to almost all of the high risk sexual offenders in Canada. Research has found that contemporary cognitive-behavioural treatment is associated with reductions in sexual recidivism rates from 17% to 10% after approximately 5 years of follow-up (Hanson et al., 2002). Furthermore, increased public awareness and concern should reduce the opportunities for sexual offenders to locate potential victims.

Policy implications

Although no finding is ever definitive, the basic findings of the current study are sufficiently reliable to have implications for criminal justice policy. Given that the level of sexual recidivism is lower than commonly believed, discussions of the risk posed by sexual offenders should clearly differentiate between the high public concern about these offences and the relatively low probability of sexual re-offence.

The variation in recidivism rates suggests that not all sex offenders should be treated the same.  Within the correctional literature it is well known that the most effective use of correctional resources targets truly high-risk offenders and applies lower levels of resources to lower risk offenders (Andrews & Bonta, 2003).  The greater the assessed risk, the higher the levels of intervention and supervision; the lower the assessed risk, the lower the levels of intervention and supervision.  Research has even suggested that offenders may actually be made worse by the imposition of higher levels of treatment and supervision than is warranted given their risk level (Andrews & Bonta, 2003).  Consequently, blanket policies that treat all sexual offenders as "high risk" waste resources by over-supervising lower risk offenders and risk diverting resources from the truly high-risk offenders who could benefit from increased supervision and human service.

Although the broad risk markers in the current study are useful for estimating recidivism risk, it is possible to improve predictive accuracy by combining such factors into structured risk scales (e.g., Hanson, 1997).  The evidence supporting the validity of these risk scales is now sufficient that they should be routinely included in applied risk assessments with sexual offenders (Barbaree, Seto, Langton, Peacock, 2001; Sjöstedt, & Långström, 2001; and reviews by Doren, 2002; Hanson, Morton & Harris, 2003).

Rather than considering all sexual offenders as continuous, lifelong threats, society will be better served when legislation and policies consider the cost/benefit break point after which resources spent tracking and supervising low-risk sexual offenders are better re-directed toward the management of high-risk sexual offenders, crime prevention, and victim services.

## Author Note

The views expressed are those of the authors and do not necessarily reflect those of Public Safety and Emergency Preparedness Canada.  We would like to thank Jean Proulx, Larry Motiuk, Marylee Stephenson, John Reddon, Lea Studer, Janice Marques, Roxanne Lieb, and Lin Song for access to their original data sets.

Andrew Harris can be reached at Corrections Research, Public Safety and Emergency Preparedness Canada, 340 Laurier Ave., West, Ottawa, K1A 0P8.  Andrew.Harris@psepc-sppcc.gc.ca.

# References

Allison, P.D. (1984). *Event history analysis : Regression for longitudinal event data.* Beverly Hills, CA: Sage.

Andrews, D. A., & Bonta, J. L. (2003). *The psychology of criminal conduct, Third Edition.* Cincinnati, Ohio: Anderson Publishing.

Barbaree, H. E., Seto, M. C., Langton, C., & Peacock, E. (2001).  Evaluating the predictive accuracy of six risk assessment instruments for adult sex offenders.  *Criminal Justice and Behavior, 28,* 490-521.

Berliner, L., Schram, D., Miller, L. L., & Milloy, C. D. (1995).  A sentencing alternative for sex offenders: A study of decision making and recidivism.  *Journal of Interpersonal Violence, 10,* 487-502.

Besserer, S., & Trainor, C. (2000). Criminal victimization in Canada, 1999.  *Juristat*.  Catalogue no. 85-002-XIE Vol. 20 no. 10. Ottawa: Canadian Centre for Justice Statistics.

Bonta, J., & Hanson, R. K. (1995a). [10-year recidivism of Canadian federal offenders]. Unpublished raw data.

Bonta, J., & Hanson, R. K. (1995b, August). Violent recidivism of men released from prison. Paper presented at the 103rd annual convention of the American Psychological Association: New York.

CS/RESORS Consulting. (1991*).  An evaluation of community sex offender programs in the Pacific Region.* Report presented to the Correctional Service of Canada Regional Headquarters (Contract no. 21803-0-A602/01-XSB).  Vancouver, B.C.: Author.

Doren, D. M. (2002).  *Evaluating Sex Offenders: A manual for civil commitments and beyond.*  Sage: Thousand Oaks.

Doren, D. M. (1998).  Recidivism base rates, predictions of sex offender recidivism, and the "sexual predator" commitment laws.  *Behavioural Sciences and the Law, 16,* 97-114.

Hanson, R. K. (2002).  *Evaluation of Manitoba's Secondary Risk Assessment.*  Unpublished manuscript. Ottawa: Department of the Solicitor General of Canada.

Hanson, R. K. (1997).  *The development of a brief actuarial risk scale for sexual offence recidivism.*  (User Report 97-04. Ottawa: Department of the Solicitor General Canada.

Hanson, R. K., Broom, I., & Stephenson, M. (2004).  Evaluating community sex offender treatment programs: A 12-year follow-up of 724 offenders.  *Canadian Journal of Behavioural Science, 36,* 87-96.

Hanson, R. K., & Bussière, M. T. (1998). Predicting relapse: A meta-analysis of sexual offender recidivism studies. *Journal of Consulting and Clinical Psychology, 66 (2),* 348-362.

Hanson, R. K., Gordon, A., Harris, A. J. R., Marques, J. K., Murphy, W., Quinsey, V., & Seto, M. (2002). The 2001 ATSA report on the effectiveness of treatment for sexual offenders.  *Sexual Abuse: A Journal of Research and Treatment, 14 (2),*169-194.

Hanson, R. K., Morton, K. E., & Harris, A. J. R. (2003). Sexual Offender Recidivism Risk: What We Know and What We Need to Know. In R. Prentky, E. Janus, & M. Seto (Eds.), *Understanding and managing sexually coercive behavior* (pp. 154-166).  Annals of the New York Academy of Sciences, Vol 989.  New York: New York Academy of Sciences.

Hanson, R. K., & Nicholaichuk, T. (2000).  A cautionary note regarding Nicholaichuk et al. (2000).  *Sexual Abuse: A Journal of Research and Treatment, 12*(4), 289-293.

Hanson, R. K., Scott, H., & Steffy, R. A. (1995). A comparison of child molesters and non-sexual criminals: Risk predictors and long-term recidivism. *Journal of Research in Crime and Delinquency, 32(3),* 325-337.

Hanson, R. K., Steffy, R. A., & Gauthier, R. (1992).  *Long-term follow-up of child molesters:  Risk prediction and treatment outcome.*  (User Report No. 1992-02.) Ottawa: Corrections Branch, Ministry of the Solicitor General of Canada.

Hanson, R. K., Steffy, R. A., & Gauthier, R. (1993). Long-term recidivism of child molesters. *Journal of Consulting and Clinical Psychology, 61,* 646-652.

Langan, P. A., Schmitt, E. L., & Durose, M. R. (2003). Recidivism of sex offenders released from prison in 1984. Bureau of Justice Statistics NCJ 198281. Washington, DC: U.S. Department of Justice.

Marques, J. K., & Day, D. M. (1996). [SOTEP follow-up data for 1995]. Unpublished raw data.

Marques, J. K., Day, D. M., Nelson, C., & West, M. A. (1993). Effects of cognitive-behavioral treatment on sex offenders' recidivism: Preliminary results of a longitudinal study. *Criminal Justice and Behavior, 21,* 28-54.

Marques, J. K., Nelson, C., West, M. A., & Day, D. M. (1994). The relationship between treatment goals and recidivism among child molesters. *Behaviour Research and Therapy, 32,* 577-588.

Marshall, W. L., & Barbaree, H.E. (1988). The long-term evaluation of a behavioural treatment program for child molesters. *Behaviour Research and Therapy, 26(6),* 499-511.

Motiuk, L. L., & Brown, S. L. (1993). *Survival time until suspension for sex offenders on conditional release.* (Research Report No. R-31). Ottawa, Canada: Correctional Service of Canada.

Motiuk, L. L., & Brown, S. L. (1996). *Factors related to recidivism among released federal sex offenders.* (Research Report No. R-49). Ottawa, Canada: Correctional Service of Canada.

Motiuk, L. L., & Porporino, F. J. (1993). *An examination of sex offender case histories in federal corrections.* (Research Report No. R-30). Ottawa, Canada: Correctional Service of Canada.

Pellerin, B., Proulx, J., Ouimet, M., Paradis, Y., McKibben, A., & Aubut, J. (1996). Étude de la récidive post-traitement chez des agresseurs sexuels judiciarisés. *Criminologie, 29,* 85-108.

Prentky, R. A., Lee, A. F. S., Knight, R. A., & Cerce, D. (1997). Recidivism rates among child molesters and rapists: A methodological analysis. *Law and Human Behavior, 21*, 635-659.

Proulx, J., Pellerin, B., McKibben, A., Aubut, J., & Ouimet, M. (1997). Static and dynamic predictors of recidivism in sexual offenders. *Sexual Abuse, 9,* 7-28.

Reddon, J. R. (1996). [Phoenix Program for Sex Offender Treatment: An evaluation update with recidivism data obtained in September, 1995]. Unpublished raw data.

Savoir, J. (2002). Crime statistics in Canada, 2001. *Juristat.* Catalogue no. 85-002-XPE Vol. 22 no. 6. Ottawa: Canadian Centre for Justice Statistics.

Sjöstedt, G., & Långström, N. (2001). Actuarial assessment of sex offender recidivism risk: A cross validation of the RRASOR and the Static-99 in Sweden. *Law and Human Behaviour, 25,* 629-645.

Song, L., & Lieb, R. (1995). *Washington State sex offenders: Overview of recidivism studies.* Olympia, WA: Washington State Institute for Public Policy.

Studer, L. H., Reddon, J. R., Roper, V., & Estrada, L. (1996). Phoenix: An inpatient treatment program for sex offenders. *Journal of Offender Rehabilitation, 23,* 91-97.

Thornton, D. (1997). [A 16-year follow-up of 563 sexual offenders released from HM Prison Service in 1979.] Unpublished raw data.

**Appendix I : Figure 1**



**Sexual Recidivism in a Sample of Mixed Sexual Offenders (N = 4,724) Over a Twenty Year Period**

**Appendix I : Figure 2**



**Sexual Recidivism in a Sample of Rapists (N = 1,038)
Over a Fifteen Year Period**

Percentage of Offenders that have not Sexually Recidivated over Time

Time in Years

**Appendix I : Figure 3**

# Sexual Recidivism in a Sample of Sexual Offenders

**A**      **Recidivism in "Extended Incest" Offenders (N = 1, 099)**      {Seventeen Year Follow-up}

**B**      **Recidivism in "Girl Victim" Offenders (N = 1, 572)**      {Seventeen Year Follow-up}

**C**      **Recidivism in "Boy Victim" Offenders (N = 706)**      {Fifteen Year Follow-up}



**Appendix I : Figure 4**

## Sexual Recidivism in a Sample of Sexual Offenders

**Those without a previous sexual conviction (N = 2, 973)**
**Versus**
**Those with a previous sexual conviction (N = 965)**
**Over a Seventeen Year Period**



**Appendix I : Figure 5**

# Sexual Recidivism in a Sample of Sexual Offenders

**Those over the age of 50 at release (N = 488) {Thirteen Year Follow-up}**
**Versus**
**Those under the age of 50 at release (N = 3, 782) {Nineteen Year Follow-up}**



**Appendix I : Figure 6**

# Sexual Recidivism in a Sample of Sexual Offenders

**A**   **Recidivism in men who have been offence-free for at least 15 years (N = 610)**

**B**   **Recidivism in men who have been offence-free for at least 10 years (N = 1, 270)**

**C**   **Recidivism in men who have been offence-free for at least 5 years (N = 2, 110)**



**Appendix II**

**Stability of Sexual Recidivism Estimates in Selected Samples of Sexual Offenders**

| Sub-Group | | 5 Years<br>% (C.I.) | 10 Years<br>% (C.I.) | 15 Years<br>% (C.I.) |
|---|---|---|---|---|
| All sexual offenders<br>(N = 4,724) | | 14.0 (12.9-15.1)<br>n = 2,492 | 19.8 (18.5-21.5)<br>n = 1,348 | 24.2 (22.2-25.8)<br>n = 631 |
| Rapists<br>(N = 1,038) | | 14.1 (11.6-16.4)<br>n = 514 | 20.6 (17.8-24.2)<br>n = 261 | 24.1 (20.1-27.9)<br>n = 157 |
| Extended Incest Child Molesters<br>(N = 1,099) | | 6.4 (4.1-7.9)<br>n = 416 | 9.4 (5.6 –12.4)<br>n = 73 | 13.2 (7.7-18.3)<br>n = 69 |
| "Girl Victim" Child Molesters<br>(N = 1,572) | | 9.2 (7.3-10.7)<br>n = 766 | 13.1 (10.4-15.6)<br>n = 218 | 16.3 (12.7-19.3)<br>n = 208 |
| "Boy Victim" Child Molesters<br>(N = 706) | | 23.0 (19.4-26.6)<br>n = 315 | 27.8 (23.8-32.2)<br>n = 105 | 35.4 (29.3-40.7)<br>n = 95 |
| Offenders without a<br>previous sexual conviction<br>versus those with a<br>previous sexual conviction<br>Total N = 3,938  ? | Without<br><br>( n = 2,973)<br>With<br><br>(n = 965) | 9.8 (8.8-11.2)<br>n = 1,798<br><br>25.2 (22.0-28.0)<br>n = 528 | 15.3 (13.4-16.6)<br>n = 995<br><br>32.4 (28.6-35.4)<br>n = 340 | 19.4 (16.9-21.1)<br>n = 454<br><br>37.2 (33.2-40.8)<br>n = 178 |
| Offenders over age 50 at<br>release versus offenders<br>less than age  50 at release<br>Total N = 4,237 | Over 50<br><br>(n = 484)<br>Less than 50<br><br>(n = 3,753) | 7.1 (4.4-9.6)<br>n = 260<br><br>14.9 (13.8-16.2)<br>n = 2,208 | 10.7 (7.4-14.6)<br>n = 135<br><br>21.1 (19.4-22.6)<br>n = 1,204 | 12.5 (7.7-16.3)<br>n = 72<br><br>25.7 (24.0-28.0)<br>n = 558 |
| Sex Offenders - offence<br>free in the community for<br>Five, Ten, and Fifteen<br>years<br>Total N = 3,970 | 5 years<br>(n = 2,103)<br>10 years<br>(n = 1,263)<br>15 years<br>(n = 604) | 7.0 (5.8-8.2)<br>n = 1,336<br>5.4 (3.5-6.5)<br>n = 631<br>3.7 (0.9-7.1)<br>n = 87 | 12.0 (10.2-13.8)<br>n = 631<br>9.0 (5.8-12.2)<br>n = 87<br>‡ | 15.3 (11.8-18.2)<br>n = 87<br>‡<br>‡ |

Note: 95% confidence interval in parentheses

‡ = Insufficient data to compute reliable estimate

**?** = Pinel sample not included: (minus 382 offenders)