# EXHIBIT C

## to Government's Opposition to Defendant's Sentencing Memorandum and Variance Motion

# Sex Offender Management Assessment and Planning Initiative Research Brief

**U.S. Department of Justice**
Office of Justice Programs
*Office of Sex Offender Sentencing, Monitoring, Apprehending, Registering, and Tracking*





# SOMAPI RESEARCH BRIEF

SEX OFFENDER MANAGEMENT ASSESSMENT AND PLANNING INITIATIVE

Luis C. deBaca, Director • July 2015

# Recidivism of Adult Sexual Offenders

by Roger Przybylski

## Introduction

Recidivism has long been a concern of criminal justice practitioners and policymakers, but has received renewed attention in recent years due to the record number of convicted offenders living in our communities.[1] Research has demonstrated that repeat offenders account for a disproportionate amount of crime, and there is widespread recognition today that recidivism reduction should be a key goal of the criminal justice system.

This Research Brief reviews the scientific literature concerning the recidivism of adult sex offenders. It presents findings about recidivism generally and sexual recidivism specifically because many sex offenders engage in both sexual and nonsexual crime. It also addresses the recidivism rates of different types of sex offenders.

## Summary of Research Findings

The recidivism of sex offenders is difficult to measure. The surreptitious nature of sex crimes, the fact that few sexual offenses are reported to authorities, and the variation in the ways researchers calculate recidivism rates all contribute to the problem.

Research has clearly shown that many sex offenses are never reported to authorities, and several studies have shown that the likelihood that a sexual assault will be reported to law enforcement decreases with the victim's age.[2] In addition, only a subset of sex offenses that are reported to law enforcement result in the arrest of the perpetrator. Given these dynamics, there is widespread recognition that the officially recorded recidivism rates of sexual offenders are a diluted measure of reoffending.

### About SOMAPI

In 2011, the SMART Office began work on the Sex Offender Management Assessment and Planning Initiative (SOMAPI), a project designed to assess the state of research and practice in sex offender management. As part of the effort, the SMART Office contracted with the National Criminal Justice Association (NCJA) and a team of subject-matter experts to review the literature on sexual offending and sex offender management and develop summaries of the research for dissemination to the field. These summaries are available online at http://smart.gov/SOMAPI/index.html.

A national inventory of sex offender management professionals also was conducted in 2011 to gain insight about promising practices and pressing needs in the field. Finally, a Discussion Forum involving national experts was held in 2012 for the purpose of reviewing the research summaries and inventory results and refining what is currently known about sex offender management.

Based on the work carried out under SOMAPI, the SMART Office has published a series of Research Briefs, each focusing on a topic covered in the sexual offending and sex offender management literature review. Each brief is designed to get key findings from the literature review into the hands of policymakers and practitioners. Overall, the briefs are intended to advance the ongoing dialogue related to effective interventions for sexual offenders and provide policymakers and practitioners with trustworthy, up-to-date information they can use to identify what works to combat sexual offending and prevent sexual victimization.





It is also important to recognize that recidivism rates are often measured differently from one study to the next. Different ways of measuring recidivism rates can produce substantially different results, and comparing rates that were derived in different ways can lead to inaccurate conclusions. Some of the most common ways in which measurement variation occurs in recidivism research are—

- Variation in the way researchers operationally define recidivism.
- Variation in the length of the followup period.
- Differences in the populations being studied.

## Recidivism Rates for All Sex Offenders

Perhaps the largest single study of sex offender recidivism to date was carried out by Langan, Schmitt, and Durose (2003). The study examined the recidivism patterns of 9,691 male sex offenders released from prisons in 15 states in 1994.[3] The researchers found a sexual recidivism rate of 5.3 percent for the entire sample of sex offenders, based on an arrest during the 3-year followup period. The violent and overall arrest recidivism rates for the entire sample were much higher: 17.1 percent and 43 percent, respectively. Nearly 4 out of every 10 (38.6 percent) sex offenders in the study were returned to prison within 3 years of their release due to the commission of a new crime or a technical violation of their release conditions.

As part of their study, Langan, Schmitt, and Durose (2003) conducted a comparative analysis of sex-offender and non-sex-offender recidivism. They found that the sex offenders in the study had a lower *overall* rearrest rate than non-sex offenders (43 percent compared to 68 percent), but their *sex crime* rearrest rate was four times higher than the rate for non-sex offenders (5.3 percent compared to 1.3 percent).

Another important recidivism study was conducted by Sample and Bray (2003). The researchers examined the arrest recidivism of 146,918 offenders who were originally arrested in Illinois in 1990. Arrestees categorized as sex offenders (based on their most serious charge in 1990 being a sex offense) had 1-year, 3-year, and 5-year rearrest rates for a new sexual offense of 2.2 percent, 4.8 percent, and 6.5 percent, respectively.[4] Sex offenders in the study had 1-year, 3-year, and 5-year rearrest rates for any new offense of 21.3 percent, 37.4 percent, and 45.1 percent, respectively.

In a meta-analysis involving 10 different studies, Harris and Hanson (2004) generated recidivism estimates based on new charges or convictions for sexual offenses, using 5-, 10-, and 15-year followup periods for several categories of sex offenders.[5] The sexual recidivism estimates for all sex offenders in the study were 14 percent at 5 years, 20 percent at 10 years, and 24 percent at 15 years. An important finding that emerged from the analysis was that the 15-year sexual recidivism rate for offenders who already had a prior conviction for a sexual offense was nearly twice that for first-time sex offenders (37 percent compared to 19 percent). Another important finding was that the rate of reoffending decreased the longer offenders had been offense-free. Whereas 14 percent of the offenders in the analysis were sexual recidivists after 5 years of followup, only 7 percent of the offenders who were offense-free at that time sexually recidivated during the next 5 years of followup.

## Recidivism Rates for Rapists

Researchers studying the recidivism of sex offenders are increasingly reporting recidivism rates specifically for rapists. Langan, Schmitt, and Durose (2003), for example, found that 5 percent of the 3,115 rapists[6] in their study were arrested for a new sex offense during the 3-year followup period, 18.7 percent were arrested for a violent crime, and 46 percent were arrested for any crime. Rapists in the study with more than one prior arrest were rearrested at a rate nearly double (49.6 percent compared to 28.3 percent) that of rapists with just one prior arrest. Harris and Hanson (2004) reported sexual recidivism estimates for rapists (based on new charges or convictions) of 14 percent at 5-year followup, 21 percent at 10 years, and 24 percent at 15 years.[7] Another study, noteworthy because of its 25-year followup period, was conducted by Prentky and colleagues (1997). Generalizing some of the study's findings to offenders who engage in rape behavior today is problematic because the study period began in 1959 and ended in 1985, and sex offender treatment and management practices were far different then than they are today. In addition, the study sample was small (136 rapists), and it consisted of individuals who were determined to be sexually dangerous and who were civilly committed. Nevertheless, it is worth noting that Prentky and colleagues found that some rapists remained at risk to reoffend long after their discharge. Based on the 25-year followup period, the researchers

found a sexual recidivism rate of 39 percent and a recidivism rate for any charge of 74 percent.

## Recidivism Rates for Child Molesters

A relatively large body of research exists on the recidivism rates of child molesters. The study of sex offenders released from state prisons in 1994, by Langan and colleagues (2003), included a large sample ($N = 4,295$) of child molesters. The researchers reported that 5.1 percent of the child molesters in the study were rearrested for a new sex crime within 3 years of their release, 14.1 percent were rearrested for a violent crime, and 39.4 percent were rearrested for a crime of any kind. Similar to the pattern for rapists, child molesters with more than one prior arrest had an overall recidivism rate nearly double (44.3 percent compared to 23.3 percent) that of child molesters with only one prior arrest. As might be expected, child molesters were more likely than any other type of offender—sexual or nonsexual—to be arrested for a sex a *crime against a child* following release from prison.

Harris and Hanson (2004) documented differential rates of recidivism for different types of child molesters. Table 1 presents the study's recidivism estimates (based on new charges or convictions) for 5-year, 10-year, and 15-year followup periods for boy-victim child molesters, girl-victim child molesters, and incest offenders.

Prentky and his colleagues (1997) also examined the recidivism of child molesters. Based on a 25-year followup period, the researchers found a sexual recidivism rate of 52 percent (defined as those charged with a subsequent sexual offense) using a sample of 115 child molesters who were discharged from civil commitment in Massachusetts between 1960 and 1984. While the difference between the 52 percent sexual recidivism rate found by Prentky and colleagues (1997) using a 25-year followup period and the 23 percent rate found by Harris and Hanson (2004) using a 15-year follow period is striking, it can be interpreted in different ways. One interpretation is that first-time recidivism may occur for some child molesters 20 or more years after criminal justice intervention, and that recidivism estimates based on shorter followup periods are likely to underestimate the lifetime risk of child molester reoffending (Doren, 1998). An alternative interpretation is that the difference is primarily an artifact of sampling, as Harris and Hanson's findings are based on a larger, more diverse sample of child molesters, including some serving community sentences, and the lifetime prevalence of sexual recidivism for child molesters is lower than the 52 percent suggested by Doren and is based, at least in part, on the Prentky et al. (1997) findings.

## Recidivism Rates for Exhibitionists

A limited body of research exists on the recidivism rates of exhibitionists. The findings and characteristics of three relevant studies are reported in table 2 on page 4.

## Comparative Recidivism Rates of Female and Male Sex Offenders

Research demonstrates that female sex offenders reoffend at significantly lower rates than male sex offenders. Based on a study of 380 female sex offenders, Cortoni and Hanson (2005) found average sexual, violent, and overall recidivisms rates for female sex offenders of 1 percent, 6.3 percent, and 20.2 percent respectively, after an average follow-up period of 5 years.[8] More recently, a meta-analysis of 10 studies involving a combined sample of 2,490 female sex offenders found an average sexual recidivism rate of about 3 percent for female sex offenders, based on an average followup period of 6.5 years[9] (Cortoni, Hanson, & Coache, 2010).[10]

**TABLE 1. SEXUAL RECIDIVISM RATES (BASED ON NEW CHARGES OR CONVICTIONS) AT 5-YEAR, 10-YEAR, AND 15-YEAR FOLLOWUP FOR BOY-VICTIM CHILD MOLESTERS, GIRL-VICTIM CHILD MOLESTERS, AND INCEST OFFENDERS**

|  | 5 years | | 10 years | | 15 years | |
|---|---|---|---|---|---|---|
|  | N | Percent | N | Percent | N | Percent |
| Any type (one or more) | 315 | 23.0 | 105 | 27.8 | 95 | 35.4 |
| Sexual assault | 766 | 9.2 | 218 | 13.1 | 208 | 16.3 |
| Sexual coercion | 416 | 6.4 | 73 | 9.4 | 69 | 13.2 |

Source: Harris and Hanson (2004).

**TABLE 2. RECIDIVISM RATES FOR EXHIBITIONISTS**

| Study | Sample | Followup Period | Recidivism Findings | | |
|---|---|---|---|---|---|
| Sugarman et al. (1994) | 210 exhibitionists | 17 years | 32% based on conviction for a contact sexual offense | 75% based on conviction for any type of crime other than exposing | |
| Rabinowitz-Greenberg et al. (2002) | 221 exhibitionists, assessed 1983–1996 | 6.8 years (average) | 11.7% based on new sexual charge or conviction | 16.8% based on new violent charge or conviction | 32.7% based on any new charge or conviction |
| Firestone et al. (2006) | 221 exhibitionists, assessed 1983–1996 | 13.2 years | 23.6% based on new sexual charge or conviction | 31.3% based on new violent charge or conviction | 8.9% based on any new charge or conviction |

## Research Limitations and Future Needs

A sound foundation of knowledge on the extent of sex offender recidivism has been produced in recent years, but significant knowledge gaps remain. Variations across studies in the operational definition of recidivism, the length of the followup period employed, and other measurement factors continue to make it difficult to make cross-study comparisons of observed recidivism rates. Studies that produce more readily comparable findings are greatly needed, as are those that employ followup periods longer than 5 years. Analyses are also needed that standardize the time at risk for all offenders in a given study using survival analysis. Future research should also attempt to build a stronger evidence base on the differential recidivism patterns of different types of sex offenders, particularly the recidivism patterns of crossover offenders.

## Conclusions and Policy Implications

Studies clearly demonstrate that the actual reoffending rates of sexual offenders are poorly reflected in official records. The magnitude of the difference between observed and actual reoffending needs to be better understood, and there is universal agreement in the scientific community that the observed recidivism rates of sex offenders are underestimates of actual reoffending.

**The observed sexual recidivism rates of sex offenders range from about 5 percent after 3 years to about 24 percent after 15 years.** Relatively low rates of recidivism— particularly sexual recidivism—are reported in studies using followup periods shorter than 5 years. Langan and colleagues (2003), for example, found a sexual recidivism rate of 5.3 percent, using a 3-year followup period for a large sample of sex offenders released from prison in 1994. Studies employing longer followup periods consistently report higher rates of recidivism. Harris and Hanson (2004), for example, reported a sexual recidivism rate of 24 percent for a sample of sex offenders, based on a 15-year followup period. Although observed recidivism rates will naturally increase as the length of the followup period increases, it is important to recognize that recidivism rates derived from followup periods of 5 years or less may mislabel a considerable proportion of repeat offenders as nonrecidivists.

**Sex offenders—regardless of type—have higher rates of general recidivism than sexual recidivism.** Although this basic reoffending pattern would naturally be expected to occur, the magnitude of the difference found in research is somewhat striking. It suggests that sex offenders are far more likely to reoffend for a nonsexual crime than a sexual crime and, as Hanson and Morton-Bourgon (2004, p. 4) have aptly stated, "policies aimed at public protection should also be concerned with the likelihood of any form of serious recidivism, not just sexual recidivism."

**Sex offenders have lower rates of general recidivism but higher rates of sexual recidivism than non-sex offenders.** Research comparing the recidivism rates of sex offenders with those of non-sex offenders consistently finds that sex offenders have lower overall recidivism rates than non-sex offenders. Child molesters, rapists, and sex offenders overall, however, are far more likely than non-sex offenders to recidivate sexually.

**Different types of sex offenders have markedly different rates of recidivism.** The empirical evidence clearly demonstrates that different types of sex offenders have a different propensity to reoffend. Research that examines the recidivism of rapists and child molesters indicates that the highest observed recidivism rates are found among child molesters who offend against boys. Comparatively lower recidivism rates are found for rapists, child molesters who victimize girls, and incest offenders. This suggests that different recidivism-reduction policies and practices are needed for different types of sex offenders.

**Female sex offenders have lower rates of recidivism than male sex offenders.** Five- to six-year rates of sexual recidivism for female sex offenders may be as low as 1 to 3 percent. The differential recidivism rates of female and male sex offenders suggests that intervention and management practices need to differentiate between female and male sex offenders, and that procedures for assessing risk that were developed for male sex offenders are unlikely to be accurate when applied to female sex offenders (Cortoni, Hanson, & Coache, 2010).[11]

## Notes

1. This includes offenders returning to the community upon release from incarceration as well as offenders who are serving or who have been discharged from community-based sentences.

2. See, for example, Kilpatrick, Saunders, and Smith (2003) and Sorenson and Snow (1991). See Pipe et al. (2007) for more information about childhood disclosure of sexual abuse.

3. These offenders accounted for about two-thirds of all male sex offenders released from state prisons in the United States that year.

4. Sample and Bray (2003) did not report the number of 1990 arrestees who were categorized as sex offenders.

5. All of the sex offenders in the analysis were released from correctional institutions, except for 202 Canadian sex offenders who were placed on probation and 287 sex offenders in Washington state who received community-based sentences.

6. The study conducted by Langan and colleagues (2003) separated "violent sex crimes" into two categories: "rape" and "other sexual assault." The term "rapist" was used to refer to a released sex offender whose imprisonment offense was defined by state law as forcible intercourse with a female or male. The "rape" category excluded statutory rape or any other nonforcible sexual act with a minor or with someone unable to give legal or factual consent. Sex offenders whose imprisonment offense was a violent sex crime that could not be positively identified as "rape" were placed in the "sexual assault" category. The 3-year recidivism rates reported for the 6,576 sex offenders categorized as sexual assaulters were as follows: 5.5 percent were rearrested for a new sex crime, 16.4 percent were rearrested for a violent crime, and 41.5 percent were rearrested for a crime of any kind.

7. The 5-year recidivism rate estimate is based on 514 offenders, the 10-year estimate is based on 261 offenders, and the 15-year estimate is based on 157 offenders.

8. The definition of recidivism varied widely, ranging from arrests to convictions to reports provided by probation officers.

9. As a comparison, the researchers reported a sexual recidivism rate of 13.7 percent for male sex offenders, based on an average followup period of 5.5 years. The average sexual recidivism rate reported for male sex offenders was derived from a previous meta-analysis (Hanson & Morton-Bourgon, 2004) of 84 studies involving 20,440 sex offenders, the majority of whom were males. Hanson and Morton-Bourgon (2004) reported that 1 of the 84 studies in the meta-analysis focused on female sex offenders. Based on the sample size reported in that study of female offenders, fewer than 100 of the 20,440 sex offenders in the Hanson and Morton-Bourgon (2004) meta-analysis were female.

10. Recidivism was defined as an arrest, charge, conviction, or incarceration for a new offense.

11. Cortoni and Hanson (2005). *Recidivism Rates of Female Sexual Offenders.* Research Summary, Vol. 11, No. 3. Ottawa, Ontario, Canada: Public Safety Canada. Retrieved from http://www.publicsafety.gc.ca/cnt/rsrcs/pblctns/rcvdsm-fmlffndrs/index-eng.aspx.

## References

Cortoni, F., & Hanson, R.K. (2005). *A Review of the Recidivism Rates of Adult Female Sex Offenders.* Research Report No. R-169. Ottawa, Ontario, Canada: Correctional Service of Canada.



Cortoni, F., Hanson, R.K., & Coache, M.È. (2010). The recidivism rates of female sex offenders are low: A meta-analysis. *Sexual Abuse: A Journal of Research and Treatment,* 22, 387–401.

Doren, D. (1998). Recidivism base rates, predictions of sex offender recidivism, and the "sexual predator" commitment laws. *Behavioral Sciences and the Law,* 16, 97–114.

Firestone, P., Kingston, D.A., Wexler, A., & Bradford, J.M. (2006). Long-term follow-up of exhibitionists: Psychological, phallometric, and offense characteristics. *Journal of the American Academy of Psychiatry and the Law,* 34(3), 349–359.

Hanson, R.K., & Morton-Bourgon, K. (2004). *Predictors of Sexual Recidivism: An Updated Meta-Analysis.* Ottawa, Ontario, Canada: Public Safety and Emergency Preparedness Canada.

Harris, A.J.R., & Hanson, R.K. (2004). *Sex Offender Recidivism: A Simple Question.* Ottawa, Ontario, Canada: Public Safety and Emergency Preparedness Canada.

Kilpatrick, D.G., Saunders, B.E., & Smith, D.W. (2003). *Youth Victimization: Prevalence and Implications.* Washington, DC: U.S. Department of Justice, Office of Justice Programs, National Institute of Justice.

Langan, P., Schmitt, E., & Durose, M. (2003). *Recidivism of Sex Offenders Released From Prison in 1994.* Washington, DC: U.S. Department of Justice, Office of Justice Programs, Bureau of Justice Statistics.

Pipe, M.E., Lamb, M.E., Orbach, Y., & Cederborg, A.C. (Eds.). (2007). *Child Sexual Abuse: Disclosure, Delay, and Denial.* Mahwah, NJ: Lawrence Erlbaum Associates.

Prentky, R., Lee, A., Knight, R., & Cerce, D. (1997). Recidivism rates among child molesters and rapists: A methodological analysis. *Law and Human Behavior,* 21, 635–659.

Rabinowitz-Greenberg, S., Firestone, P., Bradford, J., & Greenberg, D. (2002). Prediction of recidivism in exhibitionists: Psychological, phallometric, and offense factors. *Sexual Abuse: A Journal of Research and Treatment,* 14(4), 329–347.

Sample, L.L., & Bray, T.M. (2003). Are sex offenders dangerous? *Criminology and Public Policy,* 3, 59–82.

Seto, M.C. (2008). *Pedophilia and Sexual Offending Against Children: Theory, Assessment, and Intervention.* Washington, DC: American Psychological Association.

Sorenson, T., & Snow, B. (1991). How children tell: The process of disclosure in child sexual abuse. *Child Welfare,* 70, 3–15.

Sugarman, P., Dumughn, C., Saad, K., Hinder, S., & Bluglass, R. (1994). Dangerousness in exhibitionists. *Journal of Forensic Psychiatry*, 5, 287–296.

This research brief was produced by the National Criminal Justice Association under grant number 2010-DB-BX-K086, awarded by the Office of Sex Offender Sentencing, Monitoring, Apprehending, Registering, and Tracking (SMART), Office of Justice Programs, U.S. Department of Justice. The opinions, findings, and conclusions or recommendations expressed in this research brief are those of the author(s) and contributors and do not necessarily represent the official position or policies of the SMART Office or the U.S. Department of Justice.

**ABOUT SMART**

The Adam Walsh Child Protection and Safety Act of 2006 authorized the establishment of the Sex Offender Sentencing, Monitoring, Apprehending, Registering, and Tracking (SMART) Office within OJP. SMART is responsible for assisting with implementation of the Sex Offender Registration and Notification Act (SORNA), and also for providing assistance to criminal justice professionals across the entire spectrum of sex offender management activities needed to ensure public safety.